**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

SHIRLEY ROSENBERG,      :
                      :    Civil Action No. 10-4419 (SDW)
           Plaintiff,   :
                      :
           v.           :    **OPINION**
                      :
ERIC WHITEHEAD, et al.,   :
                      :
           Defendants.   :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Shirley Rosenberg
Greystone Hospital
59 Loch Avenue
Morris Plains, NJ 07950

**WIGENTON,** District Judge

Plaintiff Shirley Rosenberg, an involuntarily committed mental patient[1] confined at Greystone Hospital in Morris Plains, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of her constitutional rights.  Based on her affidavit of indigence, this Court has granted her leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.

---

[1] Plaintiff does not state the nature of her mental illness.

At this time, the Court must review the Complaint[2] to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on August 24, 2010, while she was confined at Greystone Hospital, another patient, Paul Kiczek, was also confined in her unit.  Plaintiff alleges that, because of his mental illness, Mr. Kiczek was assigned to one-to-one supervision by a nurse.  Plaintiff alleges that on August 24, 2010, Defendant Ms. Hughes Alinsanga Titlo was assigned to perform one-to-one supervision of Mr. Kiczek, and that Defendant Eric Whitehead was assigned as the charge nurse supervising Ms. Titlo.  Plaintiff alleges that on August 24, 2010, instead of properly performing her assignment of one-to-one supervision of Mr. Kiczek, Defendant Ms. Titlo was reading a newspaper and that Defendant Mr. Whitehead saw her reading the newspaper but did

---

[2] The Court notes that the Complaint is not signed, as required by Rule 11 of the Federal Rules of Civil Procedure. Plaintiff will be granted leave to submit a signed copy of the Complaint within 30 days after entry of the Order accompanying this Opinion.  Failure to comply with the requirement to submit a signed copy of the Complaint may result in the Complaint being dismissed without prejudice.

nothing to require her to resume her one-to-one supervision duty with respect to Mr. Kiczek.  Plaintiff alleges that, as a result of the lack of supervision, Mr. Kiczek entered her room and beat her in the face and head.

Plaintiff asserts claims against Defendants Ms. Titlo and Mr. Whitehead, pursuant to 42 U.S.C. § 1983,[3] for violations of the Americans With Disabilities Act, the Rehabilitation Act, the Equal Protection Clause of the Fourteenth Amendment, and the Eighth Amendment.[4]  In addition, Plaintiff alleges that the defendants failed in their duty to "protect" her, which the Court construes as a claim that the defendants deprived Plaintiff of liberty without due process in violation of the Fourteenth Amendment.

---

[3] Section 1983 does not, of itself, afford any rights, but merely provides a cause of action for violation of rights otherwise secured by the constitution or laws of the United States.

[4] Pretrial and civil detainees are protected by the Due Process Clause of the Fourteenth Amendment and convicted prisoners are protected by the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535, n.16, 545 (1979); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  As Plaintiff is not detained as a convicted and sentenced prisoner, the Eighth Amendment does not apply to her.  All claims under the Eighth Amendment will be dismissed with prejudice.

Plaintiff seeks monetary damages and injunctive relief in the form of a dismissal of the defendants from their employment.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken

5

as true) to suggest that an agreement was made.  Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

    The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

    The Court of Appeals for the Third Circuit has held, in the
context of a § 1983 civil rights action, that the Twombly
pleading standard applies outside the § 1 antitrust context in
which it was decided.  See Phillips v. County of Allegheny, 515
F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read
Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

7

Therefore, after <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  ...  If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>
> (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; <u>and</u>
>
> (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added). <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252
Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th
Cir. 2007).

In actions involving multiple claims and multiple
defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,
<u>Federal Practice and Procedure</u>, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be
liberally construed in the interest of convenience and judicial
economy.  <u>Swan v. Ray</u>, 293 F.3d 1252, 1253 (11th Cir. 2002).
However, the policy of liberal application of Rule 20 is not a
license to join unrelated claims and defendants in one lawsuit.
<u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir.

9

2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action. Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party. The court may also sever any claims against a party."

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

## III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Americans With Disabilities Act

Plaintiff alleges that the Defendants have violated his rights under the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.

The purpose of the ADA is "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1). The statute prohibits discrimination against individuals with disabilities in the areas of employment (Title I); public services, programs and activities (Title II); and public accommodations (Title III).  See generally Tennessee v. Lane, 541 U.S. 509, 516 (2004).  Only Title II is arguably applicable here.

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, provides that "no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services,

11

programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).[5]  Covered public entities are defined to include state and local governments and their agencies and instrumentalities. 42 U.S.C. § 12131(1).

Private citizens are authorized to bring suit for damages against such state and local governments, their agencies and instrumentalities, and state officers in their official capacities.  42 U.S.C. § 12133.

> To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  See 42 U.S.C. § 12132; Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1193 (10th Cir.2007).

Lopez v. Beard, 333 Fed.Appx. 685, 687 n.1, 2009 WL 1705674, *3 (3d Cir. 2009).

Here, however, Plaintiff has failed to state a claim under Title II of the ADA.  Initially, Plaintiff has failed to allege

---

[5] "Qualified" disabled persons include those who "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2). For purposes of this discussion, the Court will assume that Plaintiff is a qualified disabled person within the meaning of the statute.

that the alleged failure to protect her resulted "by reason of" her disability or from any discrimination.  To the contrary, she states that the mental health professionals at Greystone Hospital had determined that Mr. Kiczek's mental health issues required that he be monitored on a one-to-one basis.  Instead of alleging discrimination, Plaintiff alleges merely that two individuals failed to properly protect her from Mr. Kiczek as a result of dereliction of duty.  No factual allegations suggest that that dereliction resulted from any discriminatory animus.

Moreover, the United States Court of Appeals for the Third Circuit has noted that individual liability is not available for discrimination claims brought under Title II of the ADA.  Emerson v. Theil College, 296 F.3d 184, 189 (3d Cir. 2002) (noting that "individuals are not liable under Titles I and II of the ADA") (citing Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir.2001) (holding Title II does not allow suits against individuals).  Accordingly, all claims for damages asserted under Title II against the defendants will be dismissed with prejudice.

B.   Rehabilitation Act

Plaintiff also asserts that the actions of the Defendants violated her rights under the Rehabilitation Act.

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be

13

excluded from the participation in, be denied the benefits of, or be subjected to discrimination <u>under any program or activity receiving federal financial assistance</u>."  29 U.S.C. § 794(a) (emphasis added).

In light of the similarities between the Americans with Disabilities Act and the Rehabilitation Act, the Court of Appeals for the Third Circuit construes them and applies them in a consistent manner.  <u>Pennsylvania Prot. and Advocacy, Inc. v. Pennsylvania Dep't of Pub. Welfare</u>, 402 F.3d 374, 379 n.3 (3d Cir. 2005).

Here, for the same reasons that Plaintiff failed to state a claim under the ADA, she has also failed to state a claim under the Rehabilitation Act.  In addition, Plaintiff fails to allege that she was discriminated against with respect to a program or activity that receives federal financial assistance.  Nor has she sued an entity that receives such federal financial assistance.[6]

Accordingly, Plaintiff has failed to state a claim under the Rehabilitation Act.

_____

[6] The United States Court of Appeals for the Third Circuit has stated in general terms that individual liability may not be imposed under the Rehabilitation Act.  <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals.").

C.   Equal Protection Clause

Plaintiff alleges that the Defendants have violated her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim;  a plaintiff also must prove that the defendant intended to discriminate.  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor.  Village of Arlington Heights, 429 U.S. at 265-66.

15

Once this intentional disparity in treatment is shown, a
court will proceed to determine whether the disparity can be
justified under the requisite level of scrutiny.  See City of
Cleburne, 473 U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17
(1982); Price v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert.
denied, 465 U.S. 1032 (1984) .  In testing the validity of state
legislation or other official action that is alleged to deny
equal protection, the "general rule is that legislation is
presumed to be valid and will be sustained if the classification
drawn by the statute is rationally related to a legitimate state
interest."  City of Cleburne, 473 U.S. at 439-40.  The general
rule gives way, however, when a statute classifies by race,
alienage, or national origin; in general, these classifications
"are subjected to strict scrutiny and will be sustained only if
they are suitably tailored to serve a compelling state interest."
Id. at 440.

Here, Plaintiff fails to allege any facts suggesting that
she was treated differently from other persons similarly
situated.  She further fails to allege any facts suggesting
discriminatory intent.  Accordingly, the equal protection claim
will be dismissed with prejudice.

D.   Due Process Clause

Plaintiff asserts that the Defendants failed in their duty
to protect her, which this Court construes as a claim that the

16

Plaintiffs deprived her of liberty in violation of her substantive rights under the Due Process Clause.

In <u>DeShaney v. Winnebago Cty. Soc. Servs. Dept.</u>, 489 U.S. 189 (1989), addressed the issue of when government officials can be held liable, under a substantive due process theory, for injuries inflicted on a person by a third party.

> ... It is true that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals. In <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) we recognized that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners. We reasoned that because the prisoner is unable "'by reason of the deprivation of his liberty [to] care for himself,'" it is only "'just'" that the State be required to care for him.

> In <u>Youngberg v. Romeo</u>, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), we extended this analysis beyond the Eighth Amendment setting, holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety" from themselves and others. As we explained: "If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed - who may not be punished at all - in unsafe conditions." ...

> But these cases afford petitioners no help. Taken together, they stand only for the proposition that when the State takes a person into its custody and holds him there, against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. ... [FN7] The rationale for this principle is simple enough: when

the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.  ...  The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.  ...  In the substantive due process analysis, it is the State's affirmative act of restraining the individual's the individual's freedom to act on his own behalf - through incarceration, institutionalization, or other similar restraint of personal liberty - which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

> [FN7]  Even in this situation, we have recognized that the State "has considerable discretion in determining the nature and scope of its responsibilities."  ...

DeShaney, 489 U.S. at 198-201 (citations and footnotes omitted).

Thus, involuntarily committed mental patients retain substantive liberty interests in adequate food, shelter, clothing, and medical care, Youngberg, 457 U.S. at 315, as well as in safety, freedom of movement, and minimally adequate or reasonable training to ensure safety and freedom from undue restraint, id. at 317-19.  These interests, however, are not absolute.  Id. at 319-20.

"In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized

society."  Id. at 320 (quoting Poe v. Ullman, 367 U.S. 497, 542
(1961)(Harlan, J., dissenting)).  In seeking this balance, a
court must weigh "the individual's interest in liberty against
the State's asserted reasons for restraining individual liberty."
Id.  In Youngberg, balancing the interests of the State against
the rights of involuntarily committed mentally retarded persons
to reasonable conditions of safety and freedom from unreasonable
restraints, the Court adopted the standard advocated by a
concurring judge, below, that "the Constitution only requires
that the courts make certain that professional judgment in fact
was exercised.  It is not appropriate for the courts to specify
which of several professionally acceptable choices should have
been made."  487 U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir.
1980) (Seitz, C.J., concurring)).  Thus, even when treatment
decisions violate a protected liberty interest, such decisions
made by a qualified professional are presumptively valid;

> liability may be imposed only when the decision by the
> professional is such a substantial departure from
> accepted professional judgment, practice, or standards
> as to demonstrate that the person responsible actually
> did not base the decision on such a judgment.  In an
> action for damages against a professional in his
> individual capacity, however, the professional will not
> be liable if he was unable to satisfy his normal
> professional standards because of budgetary
> constraints; in such a situation, good-faith immunity
> would bar liability.

457 U.S. at 323 (footnote omitted).  This standard is applicable
to the decision to forcibly administer psychotropic drugs against

the will of an involuntarily committed mental patient.  See Rennie v. Klein, 720 F.2d 266 (3d Cir. 1983).  Nevertheless, the Court of Appeals for the Third Circuit has held that, even after Youngberg, nonprofessional employees who provide care for involuntarily institutionalized mentally retarded persons are subject only to a "deliberate indifference" standard.  Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990).

Here, the allegations that Defendants Mr. Whitehead and Ms. Titlo knowingly failed to maintain one-to-one supervision of Mr. Kiczek, despite a therapeutic judgment ordering such supervision, and that that failure allowed Mr. Kiczek to attack Plaintiff, is sufficient to avoid dismissal at this screening stage.  The claim under the Due Process Clause may proceed.

E.   Pendent State Claims

Finally, Plaintiff asserts pendent jurisdiction over state claims.  See 28 U.S.C. § 1367.  Plaintiff has failed, however, to describe what state claims she seeks to pursue.  Accordingly, all purported state claims will be dismissed without prejudice for failure to state a claim or to provide the notice required by Rule 8 of the Federal Rules of Civil Procedure.

V.   CONCLUSION

For the reasons set forth above, the Fourteenth Amendment due process claim may proceed.  All other claims will be dismissed, pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii),

for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement her pleading with facts sufficient to overcome certain deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.[7]

An appropriate order follows.


s/Susan D. Wigenton
Susan D. Wigenton
United States District Judge

Dated: March 10, 2011

---

[7] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.