UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHIRLEY ROSENBERG,

          Plaintiff,

v.

ERIC WHITEHEAD, and HUGHES
ALINSANGA TITLO,[1]

          Defendants.

Civil Action No. 10-4419 (SDW)(MCA)

**OPINION**

April 27, 2012

**WIGENTON**, District Judge.

Before the Court is Defendants Eric Whitehead ("Whitehead") and Titolo Hughes-Akinsanya's ("Titolo") (collectively "Defendants") Motion to Dismiss Plaintiff Shirley Rosenberg's ("Plaintiff" or "Rosenberg") Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion"). This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper pursuant to 28 U.S.C. § 1391. This Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons discussed below, this Court grants in part and denies in part Defendants' Motion.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff, an involuntarily committed psychiatric patient at the Greystone Hospital ("Greystone") in Morris Plains, New Jersey, brings this action against Defendants pursuant to 42

---

[1] The Second Amended Complaint names "Titola Hughes-Akinsanya" as a defendant. This Court assumes that Hughes Alinsanga Titlo and Titola Hughes-Akinsanya is the same individual. However, this Court is unclear as to the correct spelling of defendant's name because her name is spelled as "Titolo Hughes-Akinsanya" in her moving papers.

1

U.S.C. § 1983 alleging a violation of the Fourteenth Amendment.[2] (SAC ¶¶ 1, 28-36.) Rosenberg alleges that on August 24, 2010, she woke up in her room at Greystone to find another patient, P. K., on top of her. (SAC ¶¶ 11-12.) Plaintiff asserts that P.K., without provocation, began to strike her face and head with his fists. (Id. ¶ 13.) Consequently, Rosenberg alleges that she screamed loudly and attempted to protect herself. (Id. ¶ 14.) Plaintiff's roommate, J.C., who allegedly witnessed P.K.'s attack on Plaintiff ran out of the room and attempted to get help from the Greystone staff. (Id. ¶ 15.) P.K. allegedly left Rosenberg's room as J.C. went for help. (Id. ¶ 16.) Thereafter, Whitehead, a supervising nurse at Greystone, had doctors examine Plaintiff. (Id. ¶¶ 2, 17-18.) According to Rosenberg, she suffered serious injuries as a result of the attack including a concussion, cuts, bruises, headaches and significant swelling on her face. (Id. ¶¶ 19, 20.) Plaintiff also alleges that she is unable to sleep and has suffered mental trauma as a result of the attack. (Id. ¶ 21.)

Rosenberg alleges that prior to August 24, 2010, P.K. had a reputation at Greystone for "being a dangerous person" because he attacked several Greystone staff and patients. (Id. ¶ 26.) Plaintiff maintains that P.K. had been placed on one-to-one or individualized supervision because of his "assaultive behavior." (Id. ¶ 22.) Plaintiff asserts that one-to-one supervision required P.K. "to be in view of Defendants at all times." (Id. ¶ 23.) Plaintiff also alleges that staff at Greystone was aware that P.K. required one-to-one supervision. (Id. ¶ 22.)

Rosenberg alleges that Titolo was responsible for supervising P.K. on August 24, 2010. (Id. ¶ 24.) Moreover, Rosenberg maintains that Titolo was deliberately indifferent in discharging her duty of supervising P.K. on a one-to-one basis because she was reading a newspaper at the

---

[2] Initially, Rosenberg brought claims under the Eighth Amendment, the Americans with Disabilities Act and the Rehabilitation Act. This Court dismissed those claims in its March 10, 2011 Opinion. (Docket Entry Nos. 45, 47). This Court specifically ordered that only Plaintiff's "[F]ourteenth [A]mendment substantive due process claim may proceed." (Docket Entry No. 47). Consequently, this Opinion will only address Rosenberg's sole remaining claim: the due process claim under the Fourteenth Amendment.

time of P.K.'s attack. (Id.) Similarly, Plaintiff asserts that Whitehead was deliberately indifferent in his supervision of Titolo. (Id. ¶ 25.)

Rosenberg alleges that under the Fourteenth Amendment, she has a right to safety and Defendants have a duty to ensure that she is safe during her confinement at Greystone. (Id. ¶¶ 30-31.) Rosenberg maintains that Defendants violated her rights under the Fourteenth Amendment because they failed to adequately supervise P.K. and her injuries are a direct result of their deliberate indifference to her safety. (Id. ¶¶ 33, 35.)

**LEGAL STANDARD**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). Id.

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as a whole) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

**DISCUSSION**

Section 1983 creates a federal remedy for individuals who have been deprived by state officials of their constitutional rights and privileges. See generally Gonzaga Univ. v. Doe, 536 U.S. 273 (2002). The statute provides in relevant part that "[e]very person, who under color of any statute, ordinance, regulation . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 does not "[b]y itself . . . create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To recover under § 1983, the Plaintiff must "allege the violation of a right secured by the Constitution and

laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. Official Capacity Liability

Defendants, relying on Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989), contend that Plaintiff's claim against them in their official capacities for monetary damages lacks merit because they are not persons under § 1983. (Defs.' Br. 10.) Plaintiff does not respond to this argument.

In Will, the plaintiff brought a claim under § 1983 against the Michigan State Police and the Director of State Police in his official capacity. 491 U.S. at 60. The Michigan Supreme Court held that neither a State nor a state official acting in his or her official capacity was a person under § 1983. Id. at 61. The Supreme Court, affirming the Michigan Supreme Court, noted that although "state officials literally are persons . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Id. (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Consequently, the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will, 491 U.S. at 71.

Here, Plaintiff is suing Whitehead and Titolo in their individual and official capacities. (SAC. ¶¶ 2, 3; Pl.'s Br. 5.) In light of the Supreme Court's decision in Will, Rosenberg's claims against Defendants in their official capacities for monetary damages fails.[3]

---

[3] Will permits public officials to be sued in their official capacities for prospective injunctive relief. 491 U.S. at 71 n.10. However, as Defendants point out, Plaintiff is not seeking such a remedy. (Defs.' Br. 10 n.5.) Moreover, although Defendants do not make this argument, Rosenberg's claims against Defendants in their official capacities for monetary damages are also barred under the Eleventh Amendment because Plaintiff has not alleged that New Jersey has waived its Eleventh Amendment immunity. Will, 491 U.S. at 71.

2.  **Individual Capacity Liability**

   a.  **Whitehead**

Rosenberg alleges that Whitehead was "deliberately indifferent in his duties to supervise" Titolo. (SAC ¶ 25.) In order for Whitehead to be liable under § 1983, Plaintiff must allege that he was personally involved in violating her constitutional rights. Johnson v. Derose, 349 F. App'x 679, 681 (3d Cir. 2009); see also Arguetta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 71 (3d Cir. 2011) ("It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct."). This is because § 1983 liability cannot be based entirely on a theory of *respondeat superior*. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207.

Here, Plaintiff maintains that she has sufficiently alleged that Whitehead was personally involved in violating her constitutional rights because she has alleged that Whitehead: (1) "had personal knowledge of [P].K.'s pattern of violence" and (2) "took no action to assure [her] safety." (Pl.'s Br. 11.) However, Rosenberg has not alleged that Whitehead directed Titolo not to supervise P.K. Further, Plaintiff does not assert that Whitehead was actually aware of Titolo's alleged deliberate indifference in supervising P.K. or that he encouraged Titolo to be deliberately indifferent in the performance of her duties. In addition, Whitehead's "responsibility for supervising the other defendant[, alone,] is irrelevant" for purposes of imposing liability under § 1983. Rode, 845 F.2d at 1208. As a result, her claim against Whitehead fails because the SAC does not contain any allegations suggesting that he was personally involved in P.K.'s attack.

b. **Titolo**

Plaintiff alleges that although Titolo was aware of P.K.'s reputation for being violent and dangerous, she failed to provide adequate supervision. According to Rosenberg, Titolo was deliberately indifferent in the performance of her duties because she was reading a newspaper rather than supervising P.K. (SAC ¶ 24.) Rosenberg alleges that Titolo violated her substantive due process right to safety by failing to protect her from P.K.'s assault. (Id. ¶¶ 30-32.)

Defendants maintain that Plaintiff fails to state a claim because they are entitled to qualified immunity. (Defs.' Br. 11.) The Court "has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). Qualified immunity protects government officials in their individual capacities from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In determining if a defendant is entitled to qualified immunity, "[t]here are two related but distinct inquiries." Schneyder v. Smith, 653 F.3d 313, 318 (3d Cir. 2011). First, the court must consider "whether the defendant's conduct violated the plaintiff's civil rights." Id. Second, it must determine "whether the right in question was clearly established at the time of the violation." Id. It is within the court's discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, Plaintiff's right to safety was clearly established at the time of the alleged violation. Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cnty. Dep't of Soc.

Servs., 489 U.S. 189, 197 (1989). However, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." Id. The Supreme Court set the standard for the duty of care owed to involuntarily committed individuals in Youngberg v. Romeo, 457 U.S. 307 (1982). There, the Court noted that "[w]hen a person is institutionalized – and wholly dependent on the State . . . a duty to provide certain services and care does exist . . . ." Id. at 317. Under Youngberg, "[t]he State [] has the unquestioned duty to provide reasonable safety for all residents and personnel within the institution." Id. at 324.

The Court must now determine whether Titolo violated Rosenberg's rights. Here, Rosenberg's allegations against Titolo describe conduct that is inconsistent with otherwise lawful behavior: reading a newspaper when she was supposed to supervise P.K. on a one-to-one basis even though she was aware that P.K. was violent and dangerous. Plaintiff has sufficiently alleged that Titolo violated her constitutional rights. However, Defendants argue that Plaintiff's claim must be dismissed because she cannot demonstrate that Titolo violated the standard set forth in Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000).

In Nicini, the Third Circuit noted that "[m]ere negligence is never sufficient for substantive due process liability." Id. The court then stated that "substantive due process liability attaches only to executive action that is 'so ill-conceived or malicious that it shocks the conscience.'" Id. (quoting Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999)). "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of the particular case." Miller, 174 F.3d at 375. One way to ascertain if conduct shocks the conscience is if it is a "substantial departure from accepted professional judgment." Youngberg, 457 U.S. at 323.

8

Although Defendants have accurately set forth the standard for evaluating Plaintiff's due process claim, this Court's function at this juncture is to "accept all factual allegations as true . . . and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Byers v. Intuit, Inc., 600 F.3d 286, 291 (3d Cir. 2010) (internal quotation marks and citation omitted); see also Brooks v. Austin, 720 F. Supp. 2d 715, 718 (E.D. Pa. 2010) ("At th[e motion to dismiss] stage, the court does not determine whether the non-moving party will prevail, but whether it will be permitted to offer evidence in support of the claims in the complaint."). As stated earlier, Rosenberg has "state[d] a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. In addition, in order to conclude that Titolo did not violate Rosenberg's rights, this Court will have to determine if her conduct fell below the professional judgment standard. However, the SAC does not contain factual allegations supporting the defense. In Thomas v. Independence Twp., the court recognized that "a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense, and a mere absence of detailed factual allegations supporting a plaintiff's claim for relief under § 1983 does not warrant dismissal of the complaint or establish defendants' immunity. 463 F.3d 285, 289 (3d Cir. 2006);[4] see also Yarris v. Cnty. of Delaware, 465 F.3d 129, 138-39 (3d Cir. 2006) (declining to extend the absolute immunity defense to the defendant at the motion to dismiss stage because the complaint did not provide enough facts for the court to determine if the defendant was entitled to that defense).

## CONCLUSION

For the reasons stated above, Defendants' Motion is granted in part and denied in part. All of Plaintiff's claims against Whitehead are dismissed. In addition, Rosenberg's claim against

---

[4] This Court could remedy this issue by granting a motion for a more definite statement under Fed. R. Civ. P. 12(e). Thomas, 463 F.3d at 289. However, Defendants have not moved for such relief and this Court declines to exercise its "discretion[ary authority] to demand more specific factual allegations." Id.

9

Titolo in her official capacity is dismissed. The only remaining claim is Plaintiff's claim against Titolo in her individual capacity.

s/Susan D. Wigenton, U.S.D.J.

cc: Madeline Cox Arleo, U.S.M.J.