NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHIRLEY ROSENBERG, | Civil Action No. 10-4419 (SDW)(MCA) |
| Plaintiff, | |
| v. | **OPINION** |
| ERIC WHITEHEAD, et al., | |
| Defendants. | November 14, 2013 |

**WIGENTON**, District Judge.

Before the Court is Defendant Titolola[1] Hughes's ("Defendant") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper under 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

Previous opinions and orders in this case have included extensive recitations of the factual history of this case. (See Dkt. Nos. 4, 45, 80.) Accordingly, this Court will provide a short background including only the facts relevant to the instant motion.

Shirley Rosenberg ("Plaintiff") is an involuntarily committed psychiatric patient at the Greystone Park Psychiatric Hospital ("Greystone") in Morris Plains, New Jersey. (Def.'s

---

[1] This Court notes that throughout the record, Defendant has been referenced by a number of names including Titololo, Titololo, Titlolo, and Titlola.

1

Statement of Material Facts ("SOF") at ¶ 1.) On August 24, 2010, Plaintiff was attacked by another patient, P.K., who struck her face and neck with his fists. (Id. ¶ 2.) A physician who examined Plaintiff after the incident found that she sustained a "3 x 3 cm frontal hematoma and superficial abrasion to her nose" for which an ice pack was prescribed. (Id. ¶ 3.) Plaintiff did not sustain any fractures. (Id.) Plaintiff testified that she had headaches that day. (Pl.'s Response to Def's SOF at ¶ 6.)

On the day of the incident, Defendant was the staff member responsible for one-to-one supervision of P.K. (SOF ¶ 7.) According to Defendant, a doctor's note required her "to be in eye contact [of P.K.] at all times." (Id.; Def. Br. Ex. E. at 109:7-19.) According to Plaintiff, Defendant was required to be within five feet of P.K. at all times per Greystone's policy. (Pl.'s Response to Def's SOF at ¶ 7; Pl. Br. Ex. D. at 1.) Defendant testified that at the time P.K. entered into Plaintiff's room, P.K. was fifty feet away from her and outside of her eyesight. (Def. Br. Ex. D. at 102:12-103:13.) Defendant testified that she ran into the room after P.K. and screamed for help. (SOF ¶ 7.)

The Department of Human Services Risk Management investigated the incident and prepared a report which was reviewed by the Incident Review Committee. (Id. ¶¶ 7, 9; Def. Br. Ex. A. at 9-10.) Additionally, Officer Michael Scangarella of the Human Services Police Department charged P.K. with simple assault of Plaintiff based on the incident. (SOF ¶¶ 10-11.)

On April 27, 2012, this Court dismissed Plaintiff's claims against Eric Whitehead, the charge nurse on duty, and against Defendant in her official capacity. (Dkt. No. 80.) The only remaining claim is Plaintiff's claim against Defendant in her personal capacity.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**ANALYSIS**

*Plaintiff's Section 1983 Claim*

To recover under § 1983, Plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see 42 U.S.C. § 1983 (stating that "[e]very person, who under color of any statute, ordinance, regulation . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured"). In order for Defendant to be personally liable under § 1983, Plaintiff must demonstrate that Defendant was personally involved in violating her constitutional rights. Johnson v. Derose, 349 F. App'x 679, 681 (3d Cir. 2009).

As the Supreme Court has noted, with respect to involuntarily committed individuals, "the Constitution imposes upon [the state] a corresponding duty to assume some responsibility for [their] safety and general well-being." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,

489 U.S. 189, 200 (1989). In Youngberg v. Romeo, the Supreme Court articulated that "[w]hen a person is institutionalized – and wholly dependent on the State . . . a duty to provide certain services and care does exist." 457 U.S. 307, 317 (1982). In particular, "[t]he State [ ] has the unquestioned duty to provide reasonable safety for all residents and personnel within the institution." Id. at 324. Here, it is undisputed that as an involuntarily institutionalized individual, Plaintiff was owed the duty of reasonable safety.

*Standard of Care*

This Court finds—and the parties agree—that the standard of care owed to Plaintiff by Defendant is the "deliberate indifference" standard applicable to nonprofessionals. Shaw by Strain v. Strackhouse, 920 F.3d 1135, 1145 (3d. Cir. 1990). As articulated by the Third Circuit, "[t]he deliberate indifference standard requires a showing, in cases alleging that a state actor failed to provide adequate protection, that the state actor was recklessly indifferent, grossly negligent, or deliberately or intentionally indifferent." Id. In Nicini v. Morra, the Third Circuit noted that "substantive due process liability attaches only to executive action that is 'so ill-conceived or malicious that it shocks the conscience.'" 212 F.3d 798, 810 (3d Cir. 2000) (quoting Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999)). The Third Circuit articulated that the "exact degree of wrongfulness necessary to reach the 'conscience-shocking level depends upon the circumstances of a particular case.'" Id. (quoting Miller, 174 F.3d at 375).

The central issue for this Court to determine is whether Defendant's actions were "deliberately indifferent." Plaintiff contends that Defendant knew of P.K.'s violent and dangerous tendencies and thus knew of the harm to Plaintiff before it manifested. (Pl. Opp. 7-8.) Plaintiff further claims that Defendant did not follow Greystone's policies regarding one-to-one

5

supervision of P.K and was as far as fifty feet away from P.K when he attacked Plaintiff. (Id. at 8-9.) Furthermore, Plaintiff argues that Plaintiff suffered "objectively serious" harm. (Id. at 11.)

Defendant contends that although she was advised of P.K.'s violent tendencies towards staff, there were no previous assaults on other patients and no reason to suspect that Plaintiff could be harmed by P.K. (Def. Br. 14.) Defendant argues that she was following a doctor's order that P.K. should be "in eyesight." (Def. Reply 3.) Furthermore, Defendant argues that Plaintiff's injuries were minor in that they were treatable with an ice pack, she suffered no fractures, and she denied having any symptoms. (Def. Br. 13.)

Based on the evidence adduced during discovery, this Court finds that Defendant's conduct does not amount to "deliberate indifference." Defendant testified that she was informed that P.K. had "assaulted three [or] four staff" and "tried to hurt himself;" however, nothing in the record indicates that P.K. previously assaulted another patient. (Def. Br. Ex. D. at 89:25-90:3.) Instead, the record clearly indicates that P.K.'s assault of Plaintiff was a single, isolated incident.

The parties agree that Defendant was assigned the one-to-one observation of P.K. However, Plaintiff argues that Defendant violated the hospital's policy of staying within five feet of P.K. while Defendant argues that Defendant was only required to have P.K. within eyesight per a doctor's note. (Pl. Opp 3; Pl.'s Response to Def's SOF at ¶ 7; Def. Reply 3.) Regardless of the standard—the hospital's policy or the doctor's note—Defendant's actions were, at best, negligent and do not rise to the level of "deliberate indifference." Defendant concedes that at the time P.K. entered into Plaintiff's room, he was outside of her eyesight and fifty feet away. (Def. Br. Ex. D. at 102:12-103:13.) However, Defendant ran into the room after P.K. and screamed for help. (See SOF ¶ 7.) Nothing about Defendant's conduct was "so ill-conceived or malicious that it shocks the conscience." Nicini, 212 F.3d at 810.

6

Moreover, the evidence indicates that Plaintiff's injuries, while unfortunate, were not serious. Plaintiff sustained a 3 x 3 cm hematoma and abrasion to her nose treatable with an ice pack. (SOF ¶ 3.) Plaintiff testified that she had a headache the first day and continues to experience psychological distress and fear of P.K. (Pl.'s Response to Def's SOF at ¶¶ 6, 8.) However, based on the medical records, Plaintiff did not sustain any fractures or other serious injuries. (See SOF ¶ 3.) Although Plaintiff attempts to characterize the injuries as "serious," there is no support for these contentions in the record. Accordingly, this Court finds that summary judgment in favor of Defendant is warranted on Plaintiff's claim.

**CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**.

s/Susan D. Wigenton, U.S.D.J.

cc: Madeline Cox Arleo, U.S.M.J.